# EXHIBIT A

Case 1.25-cv-10515-DEH-SN    Document 1-1    Filed 12/18/25    Page 2 of 46

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| **STEVEN KENT,** | **Index No.** |
| Plaintiff, | |
| -against- | **SUMMONS** |
| **MESSNER REEVES LLP,** | |
| Defendant. | Plaintiff designates New York County as the place of trial |

TO THE ABOVE-NAMED DEFENDANT:

YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's Attorney within 20 days after the service of this summons, exclusive of the day of service, or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Case 1:25-cv-10515-DEH-SN    Document 1-1    Filed 12/18/25    Page 3 of 46

Plaintiff designates New York County as the place of trial.  The basis of the venue is

Section 503 of the New York Civil Practice Law and Rules.

DATED: October 31, 2025                    Steven Kent, Plaintiff Pro Se
        Mt Vernon, NY

                                    By:    /s/ STEVEN KENT
                                           Steven Kent (stevenkentatty@gmail.com)
                              651    Attorney Pro Se for Plaintiff
                                     651 N. Terrace Ave Apt. 6B
                                     Mt Vernon, New York 10552
                                     (646) 641-2391

                                     stevenkentatty@gmail.com

**DEFENDANT'S ADDRESS**:

88 Pine Street, Suite 2450
New York, New York 10005

**Defendants' Addresses:**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

**STEVEN KENT,**

Plaintiff,

-against-

**MESSNER REEVES LLP,**

Defendant.

Index No.     /2025

**VERIFIED COMPLAINT**

---

      Plaintiff Steven Kent ("Plaintiff"), by his verified complaint against defendant Messner Reeves LLP ("Defendant"), and seeking money damages for breach of contract, an account stated, unjust enrichment, quantum meruit, breach of contractual promises of payment, and fraud in the inducement, alleges and states as follows:

<u>INTRODUCTION</u>

1.     Plaintiff, during the period 2020-2022, introduced business opportunities and performed professional services, as a duly licensed attorney at law, on an "of counsel" basis, in connection with the law practice of Defendant, a large multi-state law firm based in Denver, Colorado.

2.     Defendant then conducted (and presently conducts) a local New York City law practice from offices located at 833 Third Avenue (during 2020 and 2021), and at 88 Pine Street (from 2022 to the present).

3.     Plaintiff introduced law clients to Defendant, brought to Defendant legal assignments wherein Defendant was engaged by the clients in litigation matters, and arranged for the Defendant's engagement on a *pro bono* basis in the representation of economically disadvantaged clients threatened with homelessness and/or deportation from the United States.

4.     Plaintiff acted as the principal attorney on all such client matters that Plaintiff brought or

1

introduced to Defendant.

## The Parties

5.    Defendant was and is a duly qualified corporate entity of the State of Colorado or other U.S. jurisdiction, conducted business relevant to this action in the State of New York and in other states, with its business presently conducted at offices located at 88 Pine Street, Suite 2450, New York, NY 10005.

6.    Plaintiff is an individual resident of the State of New York, conducts the practice of law within this county, and resides at 651 N. Terrace Ave, Apt 6B, Mt Vernon, NY 10552.

## Jurisdiction and Venue

7.    At the times relevant to the allegations in the complaint, Plaintiff has resided, conducted business, and performed legal and related professional services on behalf of and at the request of Defendant in New York County and at other locations within New York City and the State of New York.

8.    Defendant engaged in regular and systematic business activities in New York County and New York City, and/or transacted substantial business activities and derived business revenues relevant to this action from within New York County and New York City, all on a regular and systematic basis, and/or specifically engaged Plaintiff to perform legal and related professional services, within New York County and New York City, out of which this action arises.  The Court thus has personal jurisdiction over the Defendant pursuant to CPLR §§301 and 302.

9.    Venue is proper in this county, pursuant to CPLR §503, because, among other reasons, Plaintiff conducts business within this county and  New York City, and the legal services performed by Plaintiff which are at issue in this action were performed at the request of Defendant within this county and New York City.

## THE FACTS UNDERLYING THIS ACTION

10. During 2020, 2021 and 2022, Plaintiff performed legal services for such clients and caused Defendant to issue invoices each month on the legal matters of the paying clients that Plaintiff introduced to Defendant.

11. All of the invoices issued by the Defendant at the request of Plaintiff were promptly paid by the clients. The total amount of $ 254,957.59 was invoiced by Defendant and fully paid by the clients that Plaintiff introduced to Defendant.

12. The terms and compensation arrangement for Plaintiff's "of counsel" relationship with Defendant were agreed to and set forth in a series of verbal discussions and emails exchanged between Plaintiff and the partner in charge of Defendant's New York office and between Plaintiff and the President of Plaintiff, Jim Smith.

13. Plaintiff's emails and communications on the terms of engagement and compensation arrangement between Plaintiff and Defendant are annexed hereto as exhibit ("Ex.") "A."

14. Defendant's emails and communications on the terms of engagement and compensation arrangement between Plaintiff and Defendant are annexed hereto as Ex. "B."

15. Plaintiff and Defendant agreed that Plaintiff would work in conjunction with Defendant's attorneys in New York and other states to introduce litigation matters to Defendant from insurance companies and other businesses, principally in the areas of professional liability matters and related matters.

16. The negotiations over Plaintiff's employment by Defendant took place during the first quarter of 2020, prior to the start of the CoVid pandemic and shutdown of office-based business activities in New York City. At the time of the negotiations Plaintiff was employed on an of counsel basis with a small New York City law firm, Levisohn Berger LLP.

17. Plaintiff represented to Defendant that during the period 2017 to 2019 the litigation matters that

3

Case 1:25-cv-10515-DEH-SN    Document 1-1    Filed 12/18/25    Page 7 of 46

Plaintiff invoiced for Levisohn Berger generated billings in excess of $750,000.

18. Plaintiff proposed introducing insurance industry and other business litigation matters as potential clients to Defendant's offices located in Colorado, Nevada, California, Arizona, Wyoming and Utah, as well as to the New York City office of Defendant.

19. During the course of the negotiations between the parties the CoVid shutdown hit New York, the founding and managing partner of Levisohn Berger passed away, the Levisohn Berger office was shut down, and Plaintiff's law practice was forced to operate "remotely."

20. During this period Plaintiff finalized his arrangement to join the Defendant on an "of counsel" basis and moved all of his billable and *pro bono* matters to Defendant.

21. Plaintiff's recorded billings for Levisohn Berger ended on April 30, 2020 and his recorded billings for Defendant commenced on May 1, 2020.

22. Between the closure of the Levisohn Berger office and the August 2020 opening of the Defendant's temporary new "scaled back" office at 833 Third Avenue, Plaintiff continued to work for Defendant on a remote basis and continued to bill his time and invoice the clients for the benefit of Defendant.

23. While working at Levisohn Berger, Plaintiff's "of counsel" share of the billings that were invoiced and collected from the clients that he introduced exceeded 60%. This was principally due to the low overhead Levisohn Berger realized by sharing a small office space with other small law firms at 11 Broadway, New York, NY.

24. During the negotiations with Defendant, Plaintiff proposed a fee sharing arrangement which would involve higher overhead costs and thereby would reduce his share of the billings from 60% to 40%. See Ex. "A." Defendant did not object to Plaintiff's revenue-sharing proposal.

25. Plaintiff utilized Defendant's temporary office at 833 Third Avenue from August 2020 to December 2021. Plaintiff's use did not generate or involve overhead costs that were any greater

4

Case 1:25-cv-10515-DEH-SN    Document 1-1    Filed 12/18/25    Page 8 of 46

than Levisohn Berger's overhead at 11 Broadway.

26.   This temporary law office space was vastly underutilized. All the attorneys employed by
      Defendant, other than the Plaintiff, elected to work remotely and were rarely present in
      Defendant's temporary office. Plaintiff, however, was the single exception and did utilize the
      Defendant's office on a regular basis.

27.   In the discussions concerning compensation Defendant assured Plaintiff that the compensation
      that he would receive would be fair, proportionate, and based upon the legal industry models
      Plaintiff provided, as reflected in annexed Ex. "A," unless there were exceptional circumstances
      that impacted the profitability of the legal matters Plaintiff introduced to Defendant.

28.   Plaintiff billed his time for the benefit of Plaintiff commencing May 1, 2020. Commencing
      January 15, 2022, Plaintiff utilized the Defendant's new permanent office space, which the
      Defendant rented at 88 Pine Street.

29.   Plaintiff was not consulted on the negotiations and the eventual terms of Plaintiff's new rental at
      88 Pine Street. The new rental provided office space to all of the attorneys employed by
      Defendant in New York, together with space for visiting attorneys from Defendant's other offices.

30.   The monthly rental of space at 88 Pine Street was reportedly in the range of $12,000 per month,
      while the monthly rental at 833 Third Avenue was a fraction of that amount.

31.   To promote the new office and enhance client interest, Jim Smith and others from Defendant's
      home office scheduled an "office opening" party for March 24, 2022.

32.   The Defendant's planning and organization of the party was extremely poor and did not include
      input from the Plaintiff, who was better positioned, from his long experience as a New York
      based lawyer, to effectively promote the party to prospective clients.

33.   Defendant ignored the recommendations of Plaintiff and created an invitation list that produced
      virtually no response from the invitees.

5

34.    In the meantime, the Plaintiff created his own list of invitees, shared the list with the party's

organizers in Denver, and ensured the ultimate success of the party by securing their attendance at

the party.

35.    This was a valuable contribution to Defendant's morale due to the group of Defendant's attorneys

who traveled across the country or came locally to attend the party. The attendance of virtually all

of the guests at the party was the result of Plaintiff's efforts.

36.    The invoices submitted for payment to the clients for the legal work Plaintiff performed for the

clients he introduced to Defendant, from May 1, 2020 until April 1, 2022, are set forth in the

following summary of invoices:

| Date | Invoice No. | Amount |
| --- | --- | --- |
| 9/14/2020 | 557367 | $  8,603.00 |
| 10/31/2020 | 562676 | $  7,991.50 |
| 11/10/2020 | 562209 | $ 15,098.00 |
| 11/30/2020 | 564025 | $  9,294.00 |
| 1/8/2021 | 567701 | $ 21,607.50 |
| 2/26/2021 | 572531 | $  7,353.00 |
| 3/15/2021 | 574660 | $  6,180.00 |
| 4/5/2021 | 575851 | $  6,704.50 |

Case 1.25-cv-10515-DEH-SN    Document 1-1    Filed 12/18/25    Page 10 of 46

| | | |
|---|---|---|
| 5/10/2021 | 579668 | $   9,782.50 |
| 6/1/2021 | 580693 | $  10,454.70 |
| 6/30/2021 | 583747 | $  14,027.77 |
| 8/2/2021 | 587322 | $  10,771.50 |
| 9/1/2021 | 590235 | $  10,513.50 |
| 10/6/2021 | 593665 | $  10,771.50 |
| 11/1/2021 | 596161 | $   7,525.00 |
| 12/2/2021 | 599908 | $  15,792.97 |
| 1/10/2022 | 603182 | $  30,666.00 |
| 2/10/2022 | 607237 | $  23,220.00 |
| 3/7/2022 | 609158 | $  18,391.50 |
| 4/6/2022 | 612502 | $  10,209.50 |
| | TOTAL INVOICED, COLLECTED | $ 254,957.94 |

37.    Thereafter, Plaintiff continued to perform professional services and incur the out-of-pocket expenses for the benefit of Defendant.

38.    Plaintiff now seeks to recover damages in the amount of no less than $100,000 for Defendant's breach of contract, owing to pay Plaintiff compensation in accordance with the terms of their agreement and the compensation standards for the production of business.

39.    Plaintiff also seeks to enforce the promises of payment and the written agreement and commitment made by Defendant, to which Plaintiff agreed and caused Plaintiff to be damaged in the amount of no less than $ 100,000.

7

40.    Plaintiff further seeks to recover damages against Defendant for fraudulently promising to pay Plaintiff a fair share of the amount that Defendant was paid on the invoices, so as to induce Plaintiff to forgo performing legal and related professional services independently or with another law firm.

### FIRST CAUSE OF ACTION
### (Breach of Contract)

41.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 40 with the same force and effect as if set forth more fully herein.

42.    Plaintiff now seeks to recover damages for breach of contract owing to Defendant's failure to pay Plaintiff his proportionate share of the fees generated by Plaintiff based upon the 2020, 2021 and 2023 invoices generated by Plaintiff.

43.    Defendant breached the agreement with Plaintiff by failing to pay Plaintiff his fair share of the fees generated by Plaintiff as described in the invoices set forth above.

44.    Plaintiff is therefore entitled to recover damages against Defendant for breach of contract.

### SECOND CAUSE OF ACTION
### (Breach of Payment Agreement)

45.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 44 with the same force and effect as if set forth more fully herein.

46.    Defendant made a series of statements concerning the obligations of Defendant to Plaintiff, and asked Defendant to act on an "of counsel" basis for the benefit of Defendant, both by the generation of fees from litigation matters, the handling of *pro bono* matters, and by assisting the Defendant's partners and other lawyers to secure assignments through contacts introduced by the Plaintiff.

8

47.    The promises and agreements to pay Plaintiff were made for the mutual benefit of Plaintiff and Defendant. Plaintiff is therefore entitled to recover damages against Defendant for breach of the promises and agreements to pay Plaintiff a proportionate share of the fees generated by Plaintiff based upon the 2020, 2021 and 2023 invoices.

### THIRD CAUSE OF ACTION
**(Common Law Fraud)**

48.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 47 with the same force and effect as if set forth more fully herein.

49.    Defendant made material misrepresentations of fact to Plaintiff, stating that they would pay Defendant satisfy a proportionate share of the fees generated by Plaintiff based upon the 2020, 2021 and 2023 invoices.

50.    Defendant's statements and emails to Plaintiff contained the false statements, fraudulent misrepresentations, and material nondisclosures as to the then present facts.

51. The statements and emails of Defendant were false, fraudulent, and failed to fully disclose the then-present facts, so as to make the Defendant's statements not misleading. At the time the statements were made, the Defendant had no present intention to pay Defendant a proportionate and fair share of the fees generated by Plaintiff based upon the 2020, 2021 and 2023 invoice or to pay the amounts due the Plaintiff.

52.    Defendants acted with full knowledge of the falsity of these statements, fraudulent misrepresentations, and material nondisclosures as to the then present facts, knowing that Plaintiff would rely on the false statements, fraudulent misrepresentations, and material nondisclosures of the then present facts, and suffer loss.

53.    The false statements, fraudulent misrepresentations, and material nondisclosures as to the then present facts made by Defendant were intended to induce Plaintiff to continue to act for Plaintiff and generate fees on an "of counsel" basis, generate invoices in the name of

9

Case 1:25-cv-10515-DEH-SN    Document 1-1    Filed 12/18/25    Page 13 of 46

Defendant and secure payment on the invoices, perform *pro bono* services for Plaintiff's reputational benefit, and work in conjunction with Defendant's attorneys in New York and other states to introduce litigation matters to Defendant from insurance companies and other businesses.

54.    Plaintiff justifiably relied upon the Defendants' false statements, fraudulent misrepresentations, and material nondisclosures as to the then present facts, and at all times thereafter reasonably believed that the Defendants would pay Defendant a proportionate and fair share of the fees generated by Plaintiff based upon the 2020, 2021, and 2023 invoices, or to pay the amounts due the Plaintiff.

55.    The false statements, fraudulent misrepresentations, and material nondisclosures as to the then present facts made by Defendant, were made with full knowledge of the falsity of each such statement, representation, and nondisclosure of the then present facts. The Defendant intended to induce Plaintiff's justifiable reliance upon such false statements, fraudulent misrepresentations, and material nondisclosures of the then present facts, all of which have caused damage and financial loss to Plaintiff. Plaintiff has not been able to recapture the time expended and expenses incurred in performing such services.

**WHEREFORE,** by reason of (a) the Defendant's breach of contract in failing to pay Defendant a proportionate and fair share of the fees generated by Plaintiff based upon the 2020, 2021 and 2023 invoices, or to pay the amounts due the Plaintiff; (b) by reason of Defendant's breach of the promise and agreement to pay, (c) by reason of Defendant having fraudulently induced Plaintiff to Plaintiff a proportionate and fair share of the fees generated by Plaintiff based upon the 2020, 2021 and 2023 invoices, or to pay the amounts due the Plaintiff were intended to induce Plaintiff to continue to act for Plaintiff and generate fees on an "of counsel" basis, generate invoices in the name of Defendant and secure payment on the invoices, perform *pro bono* services for Plaintiff's reputational benefit, and work in conjunction with Defendant's

10

attorneys in New York and other states to introduce litigation matters to Defendant from

insurance companies and other businesses, with interest from May 2022, and (d) for such other

and further relief deemed just and proper.

Dated:  October 31, 2025                          Yours, etc.
              New York, New York                       STEVEN KENT
                                                            By: /S/ Steven Kent

                                                            Attorney Pro Se for Plaintiff
                                                            651 N. Terrace Ave Apt. 6B
                                                            Mt Vernon, New York 10552
                                                            (646)  641-2391
                                                            stevenkentatty@gmail.com

To: Messner Reeves LLC
88 Pine Street, Suite
New York, NY 10005
 212

11

## VERIFICATION

State of New York, County of New York: ss:

STEVEN KENT, being duly sworn, deposes and says: I am the Plaintiff in this action.  I

have read the Complaint and know the contents to be true from my own knowledge, except as to

those matters stated on information and belief, and as to those matters I believe them to be true.

_____
Steven Kent

Sworn to before me this 31st day
of October 2025

_____
Notary Public

DEBORAH D. BOURNE
Notary Public, State of New York
No. 01BO6011988
Qualified in Westchester County
Commission Expires June 15, 2008

12

# EXHIBIT "A"

## Steve Kent

| | |
|---|---|
| **From:** | Steve Kent |
| **Sent:** | Friday, December 13, 2019 2:05 PM |
| **To:** | Abigail Nitka |
| **Cc:** | Steven Kent |
| **Subject:** | A New Message From Steve Kent/Enjoy Christmas, Family + Germany/A Reply Can Wait Until 2020 |

Hi Abby,

It was great to have lunch with you last month. I had meant to send you this message sooner, but got caught up with other things and was also a little lazy after my German trip.

I was wondering whether you could consider a joint marketing effort with me. As I told you, I had pretty much retired from insurance defense/coverage work, but I do have a few of those cases left that are still pending.

In the non-insurance realm, I do my *pro bono* work, which is rewarding, but I also still do some commercial litigation, both for plaintiffs and defendants. But that area has slowed now, and with a couple of exceptions, involves mostly small disputes.

What I am probably lacking is a proper platform for marketing myself to insurance companies and large insureds. Ironically, I actually secured my biggest insurance case due to my non-affiliation with an insurance defense firm. My firm, Levisohn Berger LLP, is an IP firm, and until my arrival, had never represented anyone from the insurance world.

This pending case was assigned because my client, a large national company (and a long term client of mine), requested me and succeeded in the request, after the City of New York (a co-defendant) had objected to an array of defense firms (with a history of representing the City) from representing my client. The City had refused to waive the conflict because the case was getting lots of media attention; I thus became the beneficiary of the City's caution.

I do not expect an opportunity like this to repeat itself any time soon. Accordingly, I list below some of my insurance contacts and ask you to consider whether you and I may have common contacts who we could approach together to seek assignments for your firm.

As far as I'm concerned, the full benefit of any work that is mutually produced would be for you and your firm. If you want to train associates or partners to build up your defense practice in New York, you would, of course, be in full control of that process. My goal is simply

to help you in securing some assignments and remain involved to whatever extent you feel I can contribute to the reporting/handling of these cases.

The biggest advantage to me of a joint approach is to secure a platform with your firm to continue with my *pro bono* work and the few commercial cases I presently handle. I would expect no draw or compensation, unless the mutually produced cases generate collections and profits sufficient to justify a distribution.

Here is a list of the contacts that may be of interest to you:

| Insurer | Name of Contact |
|---|---|
| AIG | Larry Fine, NY<br>Joe Decaminada, NY<br>Ted Borowiec, NY |
| Allianz/FFIC/AGCS | Paul Schiavone, NY<br>Jim Ilardi, NY<br>Terry Campbell, NY |
| American Guarantee & Liability | Micah Inlow, Chicago |
| AXA XL | Mark DiTaranto, Stamford |
| Berkley Group | Robert Buchert, NJ |
| Berkshire Hathaway | Todd Greeley, NY<br>Shelley Rottenberg |
| Beazley Group | Larry Griffen, Chicago |
| Brit/Rockville Risk Management | Randall Gouse, Rockville Center |
| Chubb/AXIS | Joe McGrath, New York<br>Denis Chen, Chesapeake (Virginia) |
| CNA | Bihn Phan, LA<br>Tom Wright, Chicago<br>David Philips, Philadelphia<br>Shauna Reeder, NY |
| Lexington | Kevin Gill, Boston |
| Hartford | Anthony Fowler, NY |
| HDI Global | Inez Corenevsky, LA |
| Markel | Ed Ellis, NJ |
| Navigators | Matt Holmes, Chicago |
| Seneca | John Mrakovcic, NY |
| Travelers | Denise Seifert, Buffalo |
| Willis | Rob Yellen, NY |
| Zurich | Paul Lavelle, Schaumburg |

I've never made a proposal like this before. I really am under no pressure to generate income for myself, but if something is generated, collected and proves to be profitable, I'm sure you and I could work out a fair division of the spoils. I would place absolutely no financial burden on your firm.

Think over this proposal, ask me any questions you might have, take whatever time you need, and lets try to get together early in the New Year if you are interested in discussing this further.


Best wishes,

Steve Kent

Levisohn Berger LLP
11 Broadway, Suite 615
New York, NY 10004
phone 212-486-7272  ext. 445
cell 646 641 2391
emails stevenkentatty@gmail.com; skent@llbl.com

Case 1:25-cv-10515-DEH-SN    Document 1-1    Filed 12/18/25    Page 20 of 46

**Steven Kent**

**To:**       Steven Kent
**Subject:**  Pro Bono in New York

I found emails from last year on this subject.

Could you start working on filling out these forms, keeping track of your time?

Here is a list of matters:

**SAFE PASSAGE PROJECT** (8)                    **ECUMENICAL OUTREACH**
**PARTNERSHIP** (17)

Rubi Antonia Ramirez-Moriera                         Diana Beck

                                                     Frieda Sompotan

                                                     Jeantys Ostange

Jonatan Alejandro Ramirez-Moriera

                                                     Fahad Alharbi

Karen Elizabeth Ortiz-Perez                          Yanira DeJesus Gomez-Diaz

Jamie Aracely Villela-Ortiz                          Claudia Dayana Rivas-Gomez

Josue Ernesto Rivera-Tinoco                          Camillo Campitelli

Jose Alfonso Ramos-Perez                             Gilda Sabrina Urgecho

Jorge Quieju Ajcalon

Valentina Lopez

Miguel Santiago Guinea-Garcia

Thomas James

Thomas Nugent

Diane Ingino

John Ingram

Marianne Gluckman

Richard Rohoman

Arts

Thomas Whelan

James Matheson

Lourdes Paulino

Catherina Miguel

Lisa Bielawa Bielawa

Melissa Cortes

Lucy Dhegrae

Irene Shaskar

Catherina

Miguel

STEVEN KENT

Attorney

**D:** 646.880.3712 **O:** 646.663.1860 **E:** skent@messner.com

88 Pine Street, Suite 2450, New York, NY 10005

**From:** Steven Kent
**Sent:** Friday, May 7, 2021 11:46 AM
**To:** Susannah Kent <skent17@aol.com>; Steven Kent <stevenkentatty@gmail.com>
**Subject:** Pro Bono in New York

**From:** Robin Long <rlong@messner.com>
**Sent:** Thursday, May 6, 2021 4:15 PM
**To:** Steven Kent <SKent@messner.com>; Michelle Harden <mharden@messner.com>; Jim Smith <jsmith@messner.com>
**Subject:** RE: Pro Bono in New York

Hi Steven:

I have attached our client intake form for completion to set up the new matters.  Do you have engagement letters that are signed for these clients?

We will first need to run conflicts.  Could you send over a list of name and how they relate to the matter so conflicts can be completed?

3

Please feel free to call my direct number below to answer any questions.

Thank you,

Robin Long

*Billing Manager*

Messner Reeves LLP

1430 Wynkoop Street | Suite 300

Denver, CO 80202
303.405.4181 *direct* | 303.623.1800 *main*
303.623.0552 *fax*

rlong@messner.com

messner.com

**From:** Steven Kent <SKent@messner.com>
**Sent:** Thursday, May 6, 2021 10:48 AM
**To:** Michelle Harden <mharden@messner.com>; Jim Smith <jsmith@messner.com>; Robin Long <rlong@messner.com>
**Subject:** RE: Pro Bono in New York

Thanks Michelle. I look forward to the assistance from Robin!

**From:** Michelle Harden <mharden@messner.com>
**Sent:** Thursday, May 6, 2021 11:38 AM
**To:** Jim Smith <jsmith@messner.com>; Robin Long <rlong@messner.com>; Steven Kent <SKent@messner.com>
**Subject:** Fwd: Pro Bono in New York

4

Jim and Robin,

Steve needs to open some new matters. He's going to work with the NYO associates on some matters and will be a great mentor to them.

Let me know if I can do anything.

Steve - thanks for reaching out! Hope to see you soon.

Michelle Harden

Messner Reeves LLP

Main: 303-623-1800

Mobile: 303-917-8184

Asst: Trisha Eckhardt (teckhardt@messner.com)

Sent from mobile device ~ please excuse typographical errors and abbreviations.

Begin forwarded message:

**From:** Steven Kent <SKent@messner.com>
**Date:** May 6, 2021 at 9:19:22 AM MDT
**To:** Michelle Harden <mharden@messner.com>
**Subject: Pro Bono in New York**

Hi Michelle,

I've been busy the last few weeks, but wanted to follow-up on our pro bono discussion. Sorry I wasn't in touch with you sooner.

Abby and I met yesterday and she reminded me of the interest some of the young associates have, in particular Jason McIntyre, in pro bono.

What I have been lax on is getting my cases registered with the firm, as you instructed me to do. Is there a particular contact person or law firm portal to access?

If you can point me in the right direction I will carry on from there.

Best regards and thanks,

Steve Kent

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more <u>Click Here</u>.





(816) 782-6000

CONTACT US



# Law Partner Compensation

by Chris Batz | May 12, 2016 | Blog, Lateral Moves, Law Firm Management, Law Partners



## An Overview of Law Partner Compensation

This article addresses my personal experience recruiting law partners in the United States and subjects related to their compensation. It's not exhaustive but is meant to provide a general overview.

Case 1:25-cv-10515-DEH-SN    Document 1-1    Filed 12/18/25    Page 27 of 46

# 4 Compensation Systems

Generally speaking, law firm compensation is of four systems:

1) Formula
2) Black box/ Subjective
3) A Hybrid of both
4) Lockstep

**Formula** is a very transparent compensation system of knowing fairly accurately how the collections will be divvied up. Generally smaller firms lean towards formulaic.

**Black box/ subjective** is just that; usually decided behind closed doors with a trusted compensation committee.

**A hybrid** mixes both subjective and formula giving partners some understanding usually for the upside of their practices depending year to year.

**Lockstep** compensates partners likes associates in that partners at specified levels whether tenure or merit are all paid the same.

Compensation systems are either open or closed. Meaning compensation is either a mystery to everyone except for the compensation committee in a closed system, or in an open system there are varying levels of transparency to complete transparency within the law firm. You can imagine how a compensation system affects the culture of a law firm.

# Factors for Compensation

Compensation for a partner are driven by the profit margin of a law partner's practice. The factors that determine the revenue and expense of a law partner's practice are as follows:

FILED: NEW YORK COUNTY CLERK 10/31/2025 04:14 PM
NYSCEF DOC. NO.

INDEX NO. 659545/2025
RECEIVED NYSCEF: 10/31/2025

Case 1:25-cv-10515-DEH-SN    Document 1-1    Filed 12/18/25    Page 28 of 46

-Firm size and overhead allocation

-Partner hours billed on own work originated

-Partner hours billed on work received from another attorney

-Business origination

-Additional partner or associate hours billed to assist client matters

-Bill rates

-Collections

Speaking of profit margins, the profitability of clients and partners vary greatly. Prudent law firm leaders know the difference and compensate partners accordingly.

**Check out** Lateral Moves: A Guide for Partners and Law Firms **for more information on law firms and lateral moves.**

# Timing of Compensation

Every law firm has a different compensation system, different fiscal years and different methods for doling out the compensation. Law firms generally determine a draw or base for their partners which can be as little as a 33% of projected annual compensation to as much as 70-90%. Then typically partners are paid their final distribution in December or their last month of the fiscal year if different from the calendar year. Also, many firms wait till year-end is closed to determine what final collections were. And thus partners could get their final distribution as much as 2-4 months into their next fiscal year, which again could be as much as 30, 40 or 50% of their annual income. Most law firms compensate in this manner, but a smaller count of firms pay an annualized salary over a 26 payment period.

# Income vs. Equity Partners

Case 1:25-cv-10515-DEH-SN    Document 1-1    Filed 12/18/25    Page 29 of 46

Generally speaking income partners receive a more stable consistent salary than an equity partner. It is usually less compensation than an equity partner and tends to be multiple times less. The equity partners though generally experience more fluctuations in their pay depending on the compensation system and how the individual lawyer or overall law firm performs year-to-year. If the equity partners are paid from the profits of the firm, then major capital outlays or losses will affect the bottom line which may adjust compensation down the following year.

# What is Valued: Personal Production vs. Rain Making vs. Collaboration

Law firm culture and compensation systems go hand-in-hand and tend to reward specific behaviors and thus will attract or repel certain law partner practices and clients. Due to the Great Recession of 2008 and the destruction of Dewey & LeBoeuf, law firm management are taking a harder look at law partner compensation metrics. I find these three behaviors that drive law partner behavior and reward such.

**Better be billings hours (a lot)** – In personal production, certain law firms are focusing on individual partner billing and collections. They want all of their attorneys very productive and hitting personal billable hours of 1,800 or more. More hours billed, more cash in the door. Personal billings are rewarded over rainmaking. Business development hours are not honored as billable hours and thus must be additional time put in. Again these firms will **not** pay a less productive rainmaker as well as the poster child worker bee partner racking up personal billable hours. In this firm's compensation model, you will see lots of siloed law partners with less interest to share their work.

**Make it rain (a lot)** – In a rainmaking firm compensation model, its the survival of the fittest. Law partners who hang the moon and stars are rewarded for throwing off work to other attorneys in the law firm. Their

personal billings are de-emphasized and sometimes discouraged to the chief good of bringing clients and their matters to the firm. Getting credit for client origination is everything and in these firms prepare to encounter sharp elbows or client wrestling. If you do not originate client business, you are paid a multiple less than those who do.

**Must play well with others.** – Collaboration compensation systems are less common. What I mean by this is unless you are sharing work with other attorneys and working together on matters as a team, you will not last long at this firm. On this platform, the clients are the focus and tend to primarily be institutional. This firm values legal talent, client success and the best client experience. Do your job, work hard and you will be rewarded. If want to be an island or make more from your client originations, find a new home.

# 3 Main Levers

The 3 main levers of every law partner's practice are the bill rate, the hours billed and the other attorneys billing. For any law firm big or small, the bill rate (& hours billed) determines the collections and thus the size of the pie to divide. The challenge of any partner is to incrementally increase their bill rate, keep their billable hours up and to leverage the lower bill rates in the firm by delegating work.

# Partner Capital Contributions

For more information on partner capital contributions click here.

# Calculating a Partner's Compensation & Deciphering a Partner's Book of Business

Case 1:25-cv-10515-DEH-SN    Document 1-1    Filed 12/18/25    Page 31 of 46

When calculating a book of business for a partner, a law firm will want to understand the following facts:

– The collection history of client originations for the past 3-5 years

– Future expectations of client originations

– Bill rate history and anticipated

– Collection rate

– Hours personally billing from originated clients

– Hours personally billing from work referred internally but not originated

– Accounts receivable history of clients

– Type of support practice areas, attorneys or staff, and their contributed working attorney collections

When speaking with a prospect law firm, knowledge of these subjects will help determine how you fit in their compensation system. Here are a few examples of what some might consider for compensation:

## Example #1

A partner who generates $1 million in originations annually with a bill rate of $400 and billed 1500 hours from his/her own work could assume the following:

– Personal collections of $570k (5% provision for uncollected on $600k)

– Generally speaking, partners could make between $350-450k in compensation.

Other assumptions are:

– Work shared $400k – 2,000 hrs @ $200 hr for an associate or two

– Overhead allocation of $150k conservatively to $300k per attorney depending on firm.

## Example #2

Now a partner with $2 million in business origination should not expect a linear line of expected compensation. Rule of thumb: The more business you generate the more you have to staff and pay for the increased client demand. So let's assume the same partner in Example #1 increase origination to $2m because of a large deal or case came through, then I would assume the following:

– Personal collections of $684k (5% provision for uncollected on $720k)

– Partner personal hours billed increase from 1,500-1,800 because of the demand of the large deal/case.

– Generally speaking, partners could make between $450-600-750k in compensation.

Other assumptions are:

– Work shared $1.28m – 6,400 hrs @ average rate of $200 hr to staff the excess

– Overhead allocation of $150k conservatively to $300k per attorney depending on firm.

### Example #3

So let's assume the same partner in Example #1 increase origination to $3 million. Personal collections of $684k (5% provision for uncollected on $720k) for 1,800 hours billed.

– Generally speaking, partners could make between $600-750-900k in compensation.

**Check out** Lateral Moves: A Guide for Partners and Law Firms **for more information on law firms and lateral moves.**

# Additional Suggested Articles

The 7 Partner Compensation Systems

Your Law Partner Compensation Could Be Better

9 Ways to Change Your Carnivorous Partnership Model and Save Biglaw

Law Partner Compensation Overview, The Lion Group

firms

Fixing Firm Compensation Models

For more information on our legal recruiting services, **contact us**.

Follows us on Twitter @FindtheLions and @ChrisBatz On LinkedIn Chris Batz and The Lion Group

## Related Posts

[posts_carousel  item_count="12″  category="Law  Firm  Management" show_title="yes"  show_excerpt="yes"  show_details="yes" excerpt_length="20″ width="1/1″ el_position="first last"]

Search

### Recent Blog Posts



How will Brexit affect Lawyers and Law Firms?

What Happened to Dickstein Shapiro?





Partner Lessons, Reading for Investors, Zuckerberg's 10-Year Plan



Top 10 Reasons Partners Leave a Law Firm



Leader's Summer Reading -Partner Compensation Systems



The Top 10 Reasons Why Law Partners Leave Your Law Firm



What happened to Dickstein Shapiro?



Law Partner Lessons on Bingham McCutchen & Morgan Lewis Combination

Exec Assistants

In-House

Compliance

Law Partners

## Contact Us

## Contact Address

The Lion Group

6240 W 135th Street

Suite 200

Overland Park KS 66223

(816) 782-6000

2021 Copyright © THE LION GROUP

Privacy Policy

in    f

Case 1:25-cv-10515-DEH-SN    Document 1-1    Filed 12/18/25    Page 37 of 46

# EXHIBIT "B"

## Steven Kent

| | |
|---|---|
| **From:** | Jim Smith |
| **Sent:** | Wednesday, April 27, 2022 3:04 PM |
| **To:** | Steven Kent |
| **Subject:** | RE: Steven Kent Attorney Review |
| **Attachments:** | KENT 2021 Messner Reeves Profit + Loss Report.pdf; KENT Messner Reeves Profit + Loss Report 2022 Q1 DRAFT 1.pdf; KENT Messner Reeves Profit + Loss Report December 2020.pdf |

Steven, thanks for reaching out. I tried you a few times after our last call but was unable to connect. Please try me at your convenience to discuss. 303-250-514

I have attached you 2020, 2021, and 2022 Q1 P& L statements for reference.

Jim

**JIM SMITH**
President
**Messner Reeves LLP**
**O:** 303.623.1800 **E:** jsmith@messner.com
1430 Wynkoop Street, Suite 300 Denver, CO 80202

**From:** Steven Kent <SKent@messner.com>
**Sent:** Monday, April 25, 2022 9:19 AM
**To:** Jim Smith <jsmith@messner.com>
**Subject:** Steven Kent Attorney Review

Hi Jim,

I am writing to follow-up on an email exchange and a phone call we had about a month ago.

With your assistance on a billing rate Messner has with Travelers on another case, I compromised with the claims handler on a rate increase to $235. Not as much as I wanted, but an improvement. The new rate went into effect on April 1.

In addition to the numbers I provided last month, the February bill was $18,391.50 and March was $10,209.50. April will come in somewhere between those numbers, I think.

My calculation for my compensation prior to the most recent bills was $115,000, which is explained in my March email to you.

Let me know if that will work for the firm.

Thanks,

Steve

1

*4470 per month 2018*
*5105 per month 2019-20*

*3rd Ave    Aug to Dec.*

**Firm**

**Attorney P&L**

**Steven Kent**

Reporting 01-01-2020 to 12-31-2020

Hire Date: 08/12/2020

skent@messner.com

*July 2020*
*9/15/20*
*1st half*

| P&L | | | |
|---|---|---|---|
| **Fee Income** | $ | 25,004 | |
| Staff Overhead | $ | 22,133 | 49% |
| GBE | $ | 12,489 | 28% |
| Occupancy Costs | $ | 8,542 | 19% |
| Professional Fees | $ | - | 0% |
| Salaries | $ | - | 0% |
| Benefits | $ | - | 0% |
| Client Development | $ | 1,887 | 4% |
| **Total Expenses** | $ | 45,051 | 100% |
| | | | Margin |
| **Net Income** | $ | (20,048) | -80% |

*OH 3,754 per mo.*

*9K/mo*

*1st month*

| | Revenue | | A/R | | Write Down | |
|---|---|---|---|---|---|---|
| Originating | $ | - | $ | - | $ | - |
| Primary | $ | - | $ | 7,992 | $ | |
| Individual | $ | 25,004 | $ | 7,992 | $ | - |

| | Actual | Goal | % |
|---|---|---|---|
| Billable Hours Worked | 259 | 800 | 32% |
| Billable Rev Worked | $ 54,603 | $ 35,000 | 156% |
| Hours Billed | 159 | 800 | 20% |
| Revenue Billed | $ 32,995 | $ 35,000 | 94% |
| Revenue Received | $ 25,004 | $ 35,000 | 71% |
| Effective Rate | $ 208 | $ 44 | 476% |

| Client Development | | |
|---|---|---|
| # New Clients | | - |
| YTD New Client Revenue | $ | - |
| 12-month Rolling Revenue | $ | - |
| Client Development Expense | $ | - |
| ROI | | 0% |
| Client Development Hours | | - |

3rd Ave

**Attorney P&L**

Reporting 01-01-2021 to 12-31-2021

skent@messner.com

Firm

**Steven Kent**

77,106

| P&L | | | |
|---|---|---|---|
| | $ | 122,166 | |
| Fee Income | $ | 56,261 | 48% |
| Staff Overhead | $ | 41,433 | 35% |
| GBE | $ | 10,948 | 9% |
| Occupancy Costs | $ | - | 0% |
| Professional Fees | $ | - | 0% |
| Salaries | $ | - | 0% |
| Benefits | $ | 8,163 | 7% |
| Client Development | $ | 116,805 | 100% |
| **Total Expenses** | | | **Margin** |
| | $ | 5,361 | 4% |
| Net Income | | | |

OH - 9,734

| | Revenue | | A/R | | Write Down | |
|---|---|---|---|---|---|---|
| | | | - | $ | - | |
| Originating | $ | 1,330 | $ | - | $ | - |
| Primary | $ | - | $ | 33,992 | $ | (1,159) |
| Individual | $ | 122,166 | $ | | | |

| | Actual | | Goal | % |
|---|---|---|---|---|
| | | | 2,000 | 32% |
| Billable Hours Worked | | 648 | 95,000 | 147% |
| Billable Rev Worked | $ | 139,205 | 2,000 | 35% |
| Hours Billed | | 695 | 95,000 | 156% |
| Revenue Billed | $ | 148,252 | 95,000 | 129% |
| Revenue Received | $ | 122,166 | 48 | 449% |
| Effective Rate | $ | 213 | | |

*Pine St,*

Firm

**Steven Kent**

Attorney P&L

Reporting 01-01-2022 to 03-31-2022

skent@messner.com

*132,934*

| P&L | | | |
|---|---|---|---|
| **Fee Income** | $ | 100,685 | |
| Staff Overhead | $ | 13,228 | 41% |
| GBE | $ | 9,252 | 29% |
| Occupancy Costs | $ | 7,289 | 23% |
| Professional Fees | $ | 386 | 1% |
| Salaries | $ | - | 0% |
| Benefits | $ | - | 0% |
| Client Development | $ | 1,996 | 6% |
| **Total Expenses** | $ | 32,152 | 100% |
| | | | **Margin** |
| **Net Income** | $ | 68,533 | 68% |

*10,717 per math*

| | Revenue | | A/R | | Write Down | |
|---|---|---|---|---|---|---|
| **Originating** | $ | 1,400 | $ | - | $ | (1,925) |
| **Primary** | $ | 5,585 | $ | - | $ | - |
| **Individual** | $ | 100,685 | $ | - | $ | - |

| | | Actual | | Goal | % |
|---|---|---|---|---|---|
| **Billable Hours Worked** | | 231 | | 500 | 46% |
| **Billable Rev Worked** | $ | 49,558 | $ | 25,000 | 198% |
| **Hours Billed** | | 310 | | 500 | 62% |
| **Revenue Billed** | $ | 66,693 | $ | 25,000 | 267% |
| **Revenue Received** | $ | 100,685 | $ | 25,000 | 403% |
| **Effective Rate** | $ | 215 | $ | 50 | 430% |

**STEVEN KENT**
Attorney
D: 646.830.3712 O: 646.663.1860 E: skent@messner.com
83 Pine Street, Suite 2450, New York, NY 10005

*Calculation*

From: Steven Kent
Sent: Tuesday, March 1, 2022 7:37 PM
To: Jim Smith <jsmith@messner.com>
Cc: Steven Kent <stevenkentatty@gmail.com>
Subject: Attorney Reviews

Hi Jim,

I tried to phone you but I appreciate these are busy times and you are focusing on many issues. After reading this email please let me know when would be a good time for a discussion, or you can call me at 646 641 2391.

Before we get to talk, I am submitting billing reports on my collections since September 2020 so you are brought current on my production.

When I started at Messner I was unsure where things were headed with my existing work and new business opportunities. The collections on the existing work have been fine. The total collected is about $247,000. I expect this level of billing to continue, but to increase somewhat if my biggest case cannot be settled and ends up going to trial.

Covid and Abby Nitka's departure have created something of a barrier to integrating the younger attorneys into my work, which I would have liked but did not accomplish. I have therefore done the "associate level" work myself and billed it at a somewhat higher rate (and the client has not objected).

Should there be a trial I will probably need junior associate and paralegal help while the trial lasts, which may be a month or more. I have involved Jason McIntyre in a separate case and he seems to be interested in participating in the bigger case for the trial experience. I have shared this possibility with Mikhail Shah and he has reacted positively.

Of course New York is a small office, and except for me, the attorneys are mostly working remote. Everyone seems to be getting their work done just fine, but as Covid recedes as a threat things hopefully will return to past practice and the attorneys start using our new office.

Attached is a summary of the billings on my biggest case and the Jason McIntyre assignment. This should give you a clear picture of the dollar values I have brought into the firm, and for what I think provides a basis for a fair compensation package. I propose that my compensation for the billings from September 2020, the date of the first bill, to February 2022, the most recent bill, be set at $115,000.

These are unusual times. The New York overhead -- in terms of office, equipment and support staff expense -- was probably at an all-time low before we moved to the new office. I have factored that into my calculation.

Please consider my numbers and compensation proposal, and let me know what you think. I want the compensation to be fair and balanced for both me and the firm.

Thanks for the time and consideration that you give to my proposal.

Steve Kent

Case 1:25-cv-10515-DEH-SN    Document 1-1    Filed 12/18/25    Page 43 of 46

**TRAVELERS** J

Claim Legal and Specialized Services
Operations
Travelers Claim Services
One Tower Square, 4MS
Hartford, CT 06183
TRVPanel@Travelers.com

March 29, 2022

Steven Kent, Esq.
Messner Reeves, LLP
88 Pine Street, Suite 2450
New York, NY 10005

**Travelers Non Panel Counsel Fee Agreement**

Dear Mr. Kent

The Travelers Indemnity Company on behalf of itself and its property casualty insurance affiliates ("Travelers") is pleased to engage your firm as counsel for representation of Travelers and its insureds/accounts. This document serves as our Fee Agreement with you and incorporates Travelers Retention and Billing Policy attached.

Please note that this Fee Agreement applies to all your relationships with any Travelers Divisions unless otherwise agreed to in writing.

Upon receipt of a matter, the firm will conduct a thorough investigation adequate to discover any actual or potential conflict(s) of interest and notify the Travelers contact if any such conflict(s) exist. This notice must be in writing, stating the details giving rise to the conflict(s). If a conflict is found to exist, no representation of Travelers or a Travelers insured will be undertaken without first obtaining a waiver. All waivers must be in writing. Typically, Travelers waiver of a conflict of interest will be conditioned on the other client's written agreement not to object to the firm's continued representation of Travelers and/or Travelers insureds on existing and future matters. Should any conflict(s) of interest arise during the course of representation of a Travelers insured, the firm will take no action that would jeopardize the interest of the insured in the matter.

Please also note and acknowledge:

- This Fee Agreement and the attached Retention and Billing Policy will remain in effect until further notice. Your firm agrees to incorporate the terms of this Fee Agreement and the Billing Requirements into its business relationship with Travelers or Travelers insureds/accounts for as long as your representation of either continues. Therefore, you will be sure that all firm personnel are familiar with the Fee Agreement and Billing Requirements. The terms of this Fee Agreement apply to all offices and locations of your law firm unless otherwise noted.

- You agree to the following hourly rates for all matters assigned either by Travelers or by direct referral from a Travelers insured/account:

  | | | |
  |---|---|---|
  | Partners: | $ | 235 |
  | Associates: | $ | N/A |
  | Paralegals: | $ | 95 |

- This agreement pertains to the specific handling of the following matter(s) :

  **Matter / Claim Number:**

  **FAW4563 – Monoky-Goldman, et al v. Bartlett Tree Service**

  **Rates are effective beginning 4/1/2022**

- Any waiver from the terms or from the Fee Agreement ("Waiver") must be approved and documented by Travelers and maintained in your file.

- Travelers reserves the right to terminate its relationship with you at any time without notice.

Please acknowledge your acceptance of the terms of this Fee Agreement and the Billing Requirements by signing and returning this agreement via e-mail to: Travelers Local Service Center.

Your inquiry regarding billing or business issues for a specific case should be directed to the appropriate Travelers In-House Professional.  General business questions should be directed to TRVPanel@Travelers.com

Enclosures:    The Travelers Company Retention and Billing Policy

I have received and carefully read this Fee Agreement and the attached Travelers Retention and Billing Policy for Outside Counsel. I affirm that the law firm agrees to the terms of the Fee Agreement set forth in this letter and to comply with the provisions of the Retention and Billing Policy.  Additionally I affirm all firm attorneys and staff who work on Travelers matters will be familiar with the contents of the Fee Agreement and Retention and Billing Policy.

Signature: _____

Name (print): _____Steven____Kert_____

Firm Name: _____Messner Reeves, LLP_____

Address: _88 Pine St. Suite 750, NY, NY 10005_

Tax Identification #: _____84-1303139_____

Date: _____March 29, 2022_____

## AFFIDAVIT OF SERVICE THROUGH THE SECRETARY OF STATE

SUPREME COURT
STATE OF NEW YORK, COUNTY OF NEW YORK

Purchased/Filed:

Index #  659545/2025

*Steven Kent*                                                                                    Plaintiff

against

*Messner Reeves LLP*                                                                  Defendant

STATE OF NEW YORK
COUNTY OF ALBANY         SS.:

_____James Perone_____ , being duly sworn, deposes and says: deponent is over

the age of eighteen (18) years; that on _____December 2, 2025_____ , at __11:00 AM__ , at the office of the

Secretary of State of the State of New York in the City of Albany, New York deponent served the annexed

Summons and Verified Complaint with Exhibits

on

_____Messner Reeves LLP_____ , the

Defendant in this action, by delivering to and leaving with _____Bryan Millner_____ ,

AUTHORIZED AGENT in the Office of the Secretary of State, of the State of New York, personally at the Office of

the Secretary of State of the State of New York, 99 Washington Avenue, Albany, NY, _2_ true copies thereof and that

at the time of making such service, deponent paid said Secretary of State a fee _40_ dollars; That said service was

made pursuant to Section _121-1505 Limited Liability Partnership Law_. Deponent further says that deponent knew

the person so served as aforesaid to be the agent in the Office of the Secretary of State of the State of New York,

duly authorized to accept such service on behalf of said defendant

Description of the person served:  Approx. Age: _22 - 35 Yrs._  Approx. Wt: __161-200__  Approx. Ht: _5' 4" - 5' 8"_

Color of skin: __White__  Hair color: __Brown__  Sex: __Male__  Other: _____

Sworn to before me on this

__2nd__ day of December 2025

_____
SCOTT SCHUSTER
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01SC6308636
QUALIFIED IN ALBANY COUNTY
COMMISSION EXPIRES JULY 28, 2026

_____
James Perone
**Attny's File No.**
Invoice•Work Order # S1934791

*SERVICO, INC. P.O. BOX 871. ALBANY, NY 12201*