UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN KENT,

Plaintiff,

-against-

MESSNER REEVES LLC,

Defendant.

Case No. 1:25-CV-10515 (DEH)(SN)

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

LITTLER MENDELSON, P.C.
Eric A. Savage
900 Third Avenue
New York, New York 10022
212-583-9600
Attorney for Defendant

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1

A. Plaintiff's Background and Claimed Relationship with Messner Reeves ........ 2

B. Plaintiff's Alleged Agreement Was Not Reduced to Writing ........ 3

C. Plaintiff's Discovery Responses Identify Only Documents That Allegedly "Reflect" the Agreement ........ 3

D. Plaintiff's Own Description of the Alleged Compensation Formula Is Indefinite ........ 4

E. Plaintiff Did Not Request Compensation for Multiple Quarters ........ 5

F. Plaintiff's March and April 2022 Communications Were Proposals and Discussions, Not Accepted Contract Terms ........ 5

G. Plaintiff's Fraud Theory Is Based on the Same Alleged Compensation Dispute ........ 6

ARGUMENT ........ 6

I. LEGAL STANDARD ........ 6

II. PLAINTIFF CANNOT PROVE A VIABLE BREACH OF CONTRACT, BREACH OF COMPENSATION AGREEMENT, OR FRAUD CLAIM ........ 7

A. Plaintiff's Contract Claims Fail Because He Cannot Establish a Definite and Enforceable Compensation Agreement. ........ 7

B. The March and April 2022 Communications Show Proposal and Discussion, Not Acceptance of Plaintiff's Claimed Compensation Terms. ........ 9

C. Plaintiff Cannot Establish Damages Because His Claimed 40% Recovery Is Unsupported by Any Enforceable Formula and Is Barred by the Doctrine of Accord and Satisfaction. ........ 11

D. Plaintiff's Fraud Claim Fails Because It Is Duplicative of the Contract Claims and Is Not Based on Any Actionable Misrepresentation. ........ 12

CONCLUSION ........ 13

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
98 F.3d 13 (2d Cir. 1996)....................12, 13

*Cain v. Esthetique*,
182 F. Supp. 3d 54 (S.D.N.Y. 2016)....................12

*Caro Cap., LLC v. Koch*,
No. 20-cv-6153 (LJL), 2022 U.S. Dist. LEXIS 26600 (S.D.N.Y. Feb. 14, 2022)....................10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................6

*Champion v. Artuz*,
76 F.3d 483 (2d Cir. 1996)....................7

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004)....................7

*Fischer & Mandell, LLP v. Citibank, N.A.*,
632 F.3d 793 (2d Cir. 2011)....................7

*GEM Advisors, Inc. v. Corporación Sidenor, S.A.*,
667 F. Supp. 2d 308 (S.D.N.Y. Oct. 27, 2009)....................8, 9

*Jeffreys v. City of New York*,
426 F.3d 549 (2d Cir. 2005)....................6, 7

*Jorgensen v. Epic/Sony Recs.*,
351 F.3d 46 (2d Cir. 2003)....................7

*Kitchen Winners NY Inc. v. Rock Fintek LLC*,
No. 22-cv-5276, 2023 WL 2746031 (S.D.N.Y. Mar. 31, 2023)....................13

*Merrill Lynch Realty/Carll Burr, Inc. v. Skinner*,
63 N.Y.2d 590 (1984)....................11

*Nguedi v. FRB of N.Y.*,
No. 1:16-cv-636-GHW, 2019 U.S. Dist. LEXIS 36938 (S.D.N.Y. Mar. 7, 2019)....................7

*Papa's-June Music, Inc. v. McLean*,
921 F. Supp. 1154 (S.D.N.Y. 1996)....................13

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004)....................7, 9, 10

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Ridenhour v. Bryant*,
No. 1:19-CV-2587 (ALC) 2020 WL 1503626 (S.D.N.Y. Mar. 29, 2020) ("Price or compensation are material terms in a contract requiring definiteness.") ....8, 9

*Schonfeld v. Hilliard*,
218 F.3d 164 (2d Cir. 2000)....11

*Scotto v. Almenas*,
143 F.3d 105 (2d Cir. 1998)....7

*Small v. N.Y. City Dep't of Educ.*,
650 F. Supp. 3d 89 (S.D.N.Y. Jan. 5, 2023) ....7

*Stone Key Partners LLC v. Monster Worldwide, Inc.*,
333 F. Supp. 3d 316 (S.D.N.Y. Aug. 10, 2018)....8

*Telecom Int'l Am., Ltd. v. AT&T Corp.*,
280 F.3d 175 (2d Cir. 2001)....12, 13

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*,
487 F.3d 89 (2d Cir. 2007)....8, 9, 11

*Wall v. CSX Transp., Inc.*,
471 F.3d 410 (2d Cir. 2006)....12

*Weinstock v. Columbia Univ.*,
224 F.3d 33 (2d Cir. 2000)....7

**Other Authorities**

Fed. R. Civ. P. 9(b) ....2

Fed. R. Civ. P. 56(a) ....6

Defendant Messner Reeves LLC ("Messner Reeves") submits this memorandum of law to demonstrate why Plaintiff Steven Kent ("Plaintiff") will be unable to prevail on his claim based on an alleged breach of an oral compensation agreement and that as a result, summary judgment dismissing the Complaint with prejudice is fully warranted.

## PRELIMINARY STATEMENT

Plaintiff Steven Kent, an experienced attorney proceeding *pro se*, brings this action against Defendant Messner Reeves LLC ("Messner Reeves") based on an alleged oral "of counsel" compensation arrangement. His claims fail because (a) discovery confirmed that there never was a definite, enforceable agreement requiring Messner Reeves to pay him 40% of fees, $115,000, or any other amount, and (b) even if there had been such an agreement, Messner Reeves disputed the claim, advised Plaintiff that it would pay him $25,000 instead of the $115,000 he sought, and then made payment which Plaintiff accepted. Thus, Plaintiff's claim was paid and satisfied in full.

Plaintiff admits that no written agreement was ever presented to or signed by him in connection with his affiliation with Messner Reeves, whether as a partner, of counsel, or in any other capacity. Def. 56.1 ¶ 4. Plaintiff further admits that the alleged 40% arrangement was "verbal, not written." Def. 56.1 ¶ 13. When asked to identify the documents supporting his alleged agreement, Plaintiff identified only documents that he contends "reflect" the agreement, including an article from a magazine or website. Def. 56.1 ¶¶ 18–22. No one at Messner Reeves management ever said that article would be the basis for Plaintiff's compensation system. Def. 56.1 ¶ 22.

The written record confirms that Plaintiff cannot prove an accepted compensation term. In March 2022, Plaintiff wrote to Messner Reeves President Jim Smith and expressly characterized his requested $115,000 payment as a "proposal." Def. 56.1 ¶ 34. Plaintiff asked Mr. Smith to "consider" his numbers and compensation proposal. Def. 56.1 ¶ 35. In April 2022, Plaintiff again characterized the $115,000 figure as his "calculation" and asked Mr. Smith to let him know

whether it would "work for the firm." Def. 56.1 ¶ 36. Mr. Smith did not accept that proposal. Def. 56.1 ¶¶ 37–38. Instead, Mr. Smith confirmed that Messner Reeves would wire Plaintiff $25,000 for services rendered and that the relationship would terminate effective April 29, 2022. Def. 56.1 ¶ 40. Plaintiff received and retained that $25,000 payment. Def. 56.1 ¶ 42.

Plaintiff's fraud theory fares no better. The Complaint conspicuously fails to "state with particularity the circumstances constituting fraud", as mandated by FRCP 9(b). His purported articulation of the claim at deposition was equally deficient. Plaintiff testified that Mr. Smith was the only person who allegedly engaged in fraud, and that the alleged fraudulent statement was that Plaintiff would be treated as "of counsel." Def. 56.1 ¶¶ 43–44. Plaintiff further testified that the alleged fraud concerned the way Messner Reeves calculated overhead. Def. 56.1 ¶ 45. Neither statement, even if accepted as true, supports this serious charge.[1]

Because Plaintiff cannot prove a definite agreement, breach, damages, or a separate actionable fraud, and because he accepted Messner Reeves' payment in response to his claim for compensation, Messner Reeves is entitled to summary judgment dismissing the Complaint in its entirety.

### A. Plaintiff's Background and Claimed Relationship with Messner Reeves

Plaintiff is a New York attorney who obtained his license in approximately 1978 and worked at Wilson Elser from approximately 1978 through 2017, becoming a partner at that firm in the mid-1980s. Def. 56.1 ¶ 1. Plaintiff signed a partnership agreement when he became a partner at Wilson Elser. Def. 56.1 ¶ 2.

[1] Plaintiff uses the words "unjust enrichment" and "quantum meruit" only in the opening sentence of the Complaint. Compl. ¶ 1. The Complaint does not separately plead either claim or allege supporting elements distinct from Plaintiff's contract theory. To the extent Plaintiff later attempts to rely on those theories, they fail for the same reasons discussed herein: they either duplicate the alleged contract theory or lack independent evidence that equity requires additional compensation beyond the $25,000 Plaintiff received and retained.

In or around late 2019, Plaintiff began communications with Abigail Nitka, then managing shareholder of Messner Reeves' New York City office, concerning a joint marketing approach. Def. 56.1 ¶ 3. Plaintiff was never a partner or shareholder of Messner Reeves. Def. 56.1 ¶ 5. Plaintiff alleges that he performed legal services on an "of counsel" basis during the period 2020 through 2022, introduced clients and assignments to Messner Reeves, and acted as principal attorney on certain matters. Def. 56.1 ¶¶ 6–8. Plaintiff testified that he worked at Messner Reeves until approximately April 2022. Def. 56.1 ¶ 9.

### B. <u>Plaintiff's Alleged Agreement Was Not Reduced to Writing</u>

Plaintiff claims that he had a contract with Messner Reeves. Def. 56.1 ¶ 10. However, Plaintiff testified that the "actual agreement" on which he relies was oral. Def. 56.1 ¶ 11. He further testified that the documents he produced in response to Messner Reeves' discovery requests merely "reflect" the alleged agreement. Def. 56.1 ¶ 12.

Critically, Plaintiff testified that the arrangement he claims was reached was for him to be paid an amount equal to 40% of the fees his cases generated for Messner Reeves, but that this arrangement was "verbal, not written." Def. 56.1 ¶ 13. No one at Messner Reeves ever confirmed the alleged 40% arrangement in writing. Def. 56.1 ¶ 14. Plaintiff testified that, at some point in 2022, he asked Mr. Smith about a contract or agreement that would formalize his status, but that Mr. Smith was not receptive to the idea. Def. 56.1 ¶ 15.

### C. <u>Plaintiff's Discovery Responses Identify Only Documents That Allegedly "Reflect" the Agreement</u>

Plaintiff prepared, verified, and served responses to Messner Reeves' first requests for production and first set of interrogatories. Def. 56.1 ¶ 18. In response to discovery requests asking him to identify documents concerning his compensation arrangement and documents in which Messner Reeves allegedly promised to pay him a "fair" and "proportionate" share of fees, Plaintiff

identified Bates ranges SK-R-000001 to SK-R-000043, SK-S-000298 to SK-S-000315, and SK-E-000316 to SK-E-000429. Def. 56.1 ¶ 19.

When asked whether he had produced all documents that would "in any way reflect" what he claimed was his agreement with Messner Reeves, Plaintiff testified: "I think this covers it, yeah. There's language in this that reflects the agreement." Def. 56.1 ¶ 20. Plaintiff also testified that certain pages he identified as confirming his claimed contractual relationship included an article from a magazine or website. Def. 56.1 ¶ 21. No one at Messner Reeves management said that the article would be the basis for Plaintiff's compensation system. Def. 56.1 ¶ 22.

### D. Plaintiff's Own Description of the Alleged Compensation Formula Is Indefinite

Plaintiff testified that the alleged agreement was for him to bring in business on an "of counsel" basis and, after deduction of overhead and firm profit, to receive 40% of the business he produced. Def. 56.1 ¶ 23. The alleged 40% arrangement was not reduced to writing. Def. 56.1 ¶ 24. Plaintiff never discussed the alleged 40% arrangement with Caleb Meyer, who Plaintiff understood may have been managing partner of Messner Reeves at some point during Plaintiff's tenure. Def. 56.1 ¶ 25.

Plaintiff's testimony confirms that the alleged arrangement lacks definite material terms. Plaintiff contends he was owed 40%, but also contends that overhead and firm profit first had to be deducted. Def. 56.1 ¶ 23. He identifies no written formula specifying how overhead would be calculated, how firm profit would be determined, when payment would be due, whether payment would be based on gross receipts or net income, or who had authority to approve the alleged arrangement.

### E. <u>Plaintiff Did Not Request Compensation for Multiple Quarters</u>

Plaintiff testified that he began generating work or billings for Messner Reeves in or around August or September 2020 and continued doing so through 2021. Def. 56.1 ¶ 26. Plaintiff did not request payment on account of his claimed originations during that period. Def. 56.1 ¶ 27. Plaintiff could not recall anyone at Messner Reeves raising at any time before 2022 the subject of his originations or when he would be paid. Def. 56.1 ¶ 28. Plaintiff's decision not to request payment earlier was related in part to his own personal tax timing. Def. 56.1 ¶ 29.

### F. <u>Plaintiff's March and April 2022 Communications Were Proposals and Discussions, Not Accepted Contract Terms</u>

On March 1, 2022, Plaintiff emailed Mr. Smith regarding "Attorney Reviews." Def. 56.1 ¶ 30. In that email, Plaintiff stated that he was submitting billing reports on collections since September 2020 so Smith would be brought current on Plaintiff's production. *Id.* Plaintiff stated: "When I started at Messner I was unsure where things were headed with my existing work and new business opportunities." Def. 56.1 ¶ 31.

Plaintiff further stated that the total collected on his existing work was about $247,000 and that the attached summary would provide "a basis for a fair compensation package." Def. 56.1 ¶¶ 32–33. Plaintiff then wrote: "I propose that my compensation for the billings from September 2020, the date of the first bill, to February 2022, the most recent bill, be set at $115,000." Def. 56.1 ¶ 34. Plaintiff asked Mr. Smith to consider his numbers and compensation proposal and let him know the firm's position. Def. 56.1 ¶ 35.

On April 25, 2022, Plaintiff followed up with Mr. Smith, stated that his "calculation" for compensation prior to the most recent bills was $115,000, and asked: "Let me know if that will work for the firm." Def. 56.1 ¶ 36. On April 27, 2022, Mr. Smith responded that he had tried to

reach Plaintiff after their last call and asked Plaintiff to call him to discuss. Def. 56.1 ¶ 37. Smith's April 27, 2022 email did accept Plaintiff's $115,000 proposal. Def. 56.1 ¶ 38.

On April 28, 2022, Plaintiff sent Mr. Smith routing and account information for his bank account. Def. 56.1 ¶ 39. Later that day, Smith wrote: "Per our conversation, Messner will wire you $25,000 for services rendered and the relationship between you and Messner Reeves LLP will terminate end of business on Friday 4/29/2022." Def. 56.1 ¶ 40 -41. Plaintiff received and retained the $25,000 payment. Def. 56.1 ¶ 42.

### G. Plaintiff's Fraud Theory Is Based on the Same Alleged Compensation Dispute

Plaintiff testified that Mr. Smith was the person he claimed engaged in fraud on behalf of Messner Reeves concerning the alleged contract. Def. 56.1 ¶ 43. Plaintiff testified that the alleged fraudulent statement was that Plaintiff would be treated as of counsel. Def. 56.1 ¶ 44. Plaintiff further testified that the alleged fraud concerned the way Messner Reeves calculated overhead. Def. 56.1 ¶ 45. Plaintiff testified that Mr. Smith may have said Plaintiff was not a partner. Def. 56.1 ¶ 46. Plaintiff admitted that if Smith said Plaintiff would not be a partner, that statement was true. Def. 56.1 ¶ 47.

## ARGUMENT

## I. LEGAL STANDARD

Summary judgment is appropriate where the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party may satisfy its burden by showing that the non-moving party lacks evidence to support an essential element of his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the movant meets that burden, the non-moving party must come forward with specific admissible evidence showing a genuine dispute for trial; he may not rely on conclusory allegations, speculation, or unsupported assertions. *Jeffreys v. City of New York*, 426 F.3d 549, 554

(2d Cir. 2005); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998); *see also Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) ("unsupported allegations do not create a material issue of fact").

Although a *pro se* litigant's filings are construed liberally, a *pro se* party opposing summary judgment still must submit admissible evidence sufficient to create a genuine dispute of material fact. *See Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003); *Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996); *Small v. N.Y. City Dep't of Educ.*, 650 F. Supp. 3d 89, 97 (S.D.N.Y. Jan. 5, 2023). A *pro se* litigant cannot defeat summary judgment through speculation or conclusory allegations. *See Jeffreys*, 426 F.3d at 554; *Nguedi v. FRB of N.Y.*, No. 1:16-cv-636-GHW, 2019 U.S. Dist. LEXIS 36938, *32-33 (S.D.N.Y. Mar. 7, 2019). Here, Plaintiff is proceeding *pro se* but had been a practicing attorney and litigator for more than forty years, so he is surely fully aware of his burden in opposing a motion for summary judgment.

## II. PLAINTIFF CANNOT PROVE A VIABLE BREACH OF CONTRACT, BREACH OF COMPENSATION AGREEMENT, OR FRAUD CLAIM

### A. Plaintiff's Contract Claims Fail Because He Cannot Establish a Definite and Enforceable Compensation Agreement.

Plaintiff's contract claims fail at the threshold because he cannot prove a definite agreement requiring Messner Reeves to pay him 40% of fees, $115,000, or any other specific amount. Under well-established New York law, a breach-of-contract claim requires proof of "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011); *see also Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). Contract formation requires offer, acceptance, consideration, mutual assent, and intent to be bound. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004).

A plaintiff also must prove that the alleged agreement is sufficiently definite as to its material terms. The Second Circuit has explained that a contract must be "sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d Cir. 2007). Where an alleged agreement is indefinite as to compensation, courts in this District dismiss contract claims because compensation is a material term. *See Ridenhour v. Bryant*, No. 1:19-CV-2587 (ALC) 2020 WL 1503626 (S.D.N.Y. Mar. 29, 2020) ("Price or compensation are material terms in a contract requiring definiteness."); *GEM Advisors, Inc. v. Corporación Sidenor, S.A.*, 667 F. Supp. 2d 308, 324–26 (S.D.N.Y. Oct. 27, 2009); *see also Stone Key Partners LLC v. Monster Worldwide, Inc.*, 333 F. Supp. 3d 316, 334 (S.D.N.Y. Aug. 10, 2018) ("a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable.").

Here, Plaintiff admits that the alleged compensation arrangement was not written. No written agreement was ever presented to him or signed by him in connection with his affiliation with Messner Reeves, whether as a partner, of counsel, or in any other relationship. Def. 56.1 ¶ 4. Plaintiff further testified that the alleged 40% arrangement was "verbal, not written." Def. 56.1 ¶¶ 13–14. That admission is fatal because the supposed oral arrangement still lacks definite material terms.

Plaintiff's alleged agreement is not a simple promise to pay a fixed amount. Plaintiff testified that the alleged arrangement was for him to receive an amount equal to 40% of the fees generated by his matters, but also that this figure would be calculated after deduction of overhead and firm profit. Def. 56.1 ¶ 23. That testimony leaves open essential terms: whether the 40% applied to gross collections, net income, or some other base; what expenses counted as overhead; how overhead would be allocated; how firm profit would be determined; when payment would

become due; whether payment depended on profitability; and who had authority to approve the arrangement. New York law does not permit a court or jury to supply those missing material terms after the fact. *See GEM Advisors*, 667 F. Supp. 2d at 324–26.

Plaintiff's discovery responses confirm the absence of a definite agreement. When asked to identify documents concerning his compensation arrangement and documents in which Messner Reeves allegedly promised to pay him a "fair" and "proportionate" share of fees, Plaintiff identified broad Bates ranges. Def. 56.1 ¶ 19. When asked whether he had produced all documents reflecting the alleged agreement, Plaintiff testified only that the documents "reflect" the agreement. Def. 56.1 ¶ 20. He further testified that certain pages claimed to establish the contract included an article from a magazine or website. Def. 56.1 ¶ 21. No one at Messner Reeves ever said that the article would be the basis for Plaintiff's compensation system. Def. 56.1 ¶ 22.

As a matter of law, this record cannot establish mutual assent. At most, Plaintiff has identified an alleged oral understanding, broad fairness language, and documents that he believes "reflect" a compensation theory. That is not an enforceable contract under New York law. *See Register.com*, 356 F.3d at 427; *Tractebel*, 487 F.3d at 95; *Ridenhour*, 2020 WL 1503626, at *6. Because Plaintiff cannot prove a definite, enforceable compensation agreement, his contract claims should be dismissed.

**B. <u>The March and April 2022 Communications Show Proposal and Discussion, Not Acceptance of Plaintiff's Claimed Compensation Terms.</u>**

Even if Plaintiff could rely on emails to establish a compensation agreement, the undisputed March and April 2022 communications show proposal and discussion, not acceptance, not the mutual assent to material terms mandated by New York law. *Register.com*, 356 F.3d at 427; *Tractebel*, 487 F.3d at 95. "In the absence of agreement on material terms, there is no

contract." *Caro Cap., LLC v. Koch*, No. 20-cv-6153 (LJL), 2022 U.S. Dist. LEXIS 26600, *39 (S.D.N.Y. Feb. 14, 2022).

Plaintiff's own words show that the $115,000 figure was not an agreed term. On March 1, 2022, Plaintiff wrote to Mr. Smith and stated that the attached billing summary would provide "a basis for a fair compensation package." Def. 56.1 ¶¶ 30–33. He then wrote: "I propose that my compensation for the billings from September 2020, the date of the first bill, to February 2022, the most recent bill, be set at $115,000." Def. 56.1 ¶ 34. Plaintiff asked Smith to "consider" his numbers and compensation proposal and to let him know what Smith thought. Def. 56.1 ¶ 35.

Plaintiff used the same non-binding language the next month. On April 25, 2022, Plaintiff followed up with Mr. Smith, described $115,000 as his "calculation," and asked Mr. Smith to "[l]et me know if that will work for the firm." Def. 56.1 ¶ 36. However, it is undisputed that Mr. Smith did not accept that proposal as confirmed in his April 27, 2022 email. Def. 56.1 ¶s 37, 38. Then, April 28, 2022, after Plaintiff provided routing and account information, Smith wrote: "Per our conversation, Messner will wire you $25,000 for services rendered and the relationship between you and Messner Reeves LLP will terminate end of business on Friday 4/29/2022." Def. 56.1 ¶¶ 39–40. Smith's April 28 email did not state that Messner Reeves would pay Plaintiff $115,000. Def. 56.1 ¶ 41. Plaintiff received and retained the $25,000 payment. Def. 56.1 ¶ 42.

No reasonable juror could find that Messner Reeves accepted Plaintiff's $115,000 proposal from this record. Plaintiff proposed; Mr. Smith did not accept; Messner Reeves paid a different amount; and Plaintiff retained that payment. Communications asking the recipient to "consider" a proposal or decide whether it will "work for the firm" do not establish mutual assent. *See Register.com*, 356 F.3d at 427; *Caro Capital*, 2022 U.S. Dist. LEXIS 26600, *39. Plaintiff's contract claims fail for this independent reason.

**C. <u>Plaintiff Cannot Establish Damages Because His Claimed 40% Recovery Is Unsupported by Any Enforceable Formula and Is Barred by the Doctrine of Accord and Satisfaction.</u>**

Plaintiff also cannot prove damages. Contract damages must be proven with reasonable certainty and may not be based on speculation. *See Schonfeld v. Hilliard*, 218 F.3d 164, 172–73 (2d Cir. 2000); *Tractebel*, 487 F.3d at 110. A plaintiff cannot recover damages based on a calculation that assumes a contract term he cannot prove.

That is exactly what Plaintiff does here. Plaintiff's damages theory depends on the same unsupported 40% arrangement that he admits was "verbal, not written." Def. 56.1 ¶¶ 13–14. Plaintiff claims the alleged arrangement entitled him to 40% of fees, but he also testified that overhead and firm profit would first be deducted. Def. 56.1 ¶ 23. He identifies no written formula for calculating overhead, allocating firm profit, determining timing of payment, or reconciling collections against expenses.

The March and April 2022 emails likewise show that the $115,000 figure was only Plaintiff's proposal or calculation. Def. 56.1 ¶¶ 34–36. Messner Reeves did not accept it. Def. 56.1 ¶¶ 37–41. Plaintiff's disagreement with Messner Reeves' calculation does not establish damages. At most, the record shows a dispute over what amount, if any, Plaintiff should receive under an undefined oral compensation theory after accounting for revenues, overhead, expenses, and firm profit. That is insufficient to prove damages with reasonable certainty. *See Schonfeld*, 218 F.3d at 172–73; *Tractebel*, 487 F.3d at 110.

Moreover, Plaintiff's acceptance and retention of the $25,000 payment also bars any claim for additional compensation under the doctrine of accord and satisfaction. Under New York law, an accord and satisfaction exists where there is a disputed claim, the parties agree to settle that claim by substituted performance, and the claimant accepts that performance. *See Merrill Lynch Realty/Carll Burr, Inc. v. Skinner*, 63 N.Y.2d 590, 596 (1984) ("As a general rule, acceptance of a

check in full settlement of a disputed unliquidated claim operates as an accord and satisfaction discharging the claim"); *Cain v. Esthetique*, 182 F. Supp. 3d 54, 64 (S.D.N.Y. 2016). Here, Plaintiff proposed that Messner Reeves pay him $115,000 for claimed compensation. Def. 56.1 ¶¶ 34–36. Messner Reeves did not accept that proposal and instead confirmed that, "[p]er our conversation," it would wire Plaintiff $25,000 "for services rendered" and that the parties' relationship would terminate. Def. 56.1 ¶¶ 37–41. Plaintiff then received and retained the $25,000 payment. Def. 56.1 ¶ 42. Having accepted the substituted payment made in response to his compensation demand, Plaintiff cannot establish recoverable damages beyond that amount.

Plaintiff's failure to prove damages, and his acceptance and retention of the $25,000 payment in satisfaction of the parties' compensation dispute, provide independent bases for summary judgment on the contract claims.

### D. Plaintiff's Fraud Claim Fails Because It Is Duplicative of the Contract Claims and Is Not Based on Any Actionable Misrepresentation.

Plaintiff's fraud claim is legally insufficient. Under New York law, a fraud claim requires that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415–16 (2d Cir. 2006). A fraud claim that merely duplicates a contract claim must be dismissed unless the plaintiff identifies "(i) a legal duty separate from the duty to perform under the contract; (ii) a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (internal citations omitted). A fraud claim also cannot rest merely on a party's alleged intent not to perform contractual obligations. *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001);

*Kitchen Winners NY Inc. v. Rock Fintek LLC*, No. 22-cv-5276, 2023 WL 2746031, at *18 (S.D.N.Y. Mar. 31, 2023); *see also Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996) (dismissing fraud claim where "the complaint does not allege a fraud claim that is sufficiently distinct from the breach of contract claim" but "merely appends allegations about [defendant's] state of mind to the claim for breach of contract").

Plaintiff's own testimony defeats his fraud claim. Plaintiff testified that Smith was the only person he claims engaged in fraud concerning the alleged contractual arrangement. Def. 56.1 ¶ 43. Plaintiff testified that the alleged fraudulent statement was that Plaintiff would be treated as of counsel. Def. 56.1 ¶ 44. Plaintiff further testified that the alleged fraud concerned the way Messner Reeves calculated overhead. Def. 56.1 ¶ 45. Plaintiff also testified that Smith may have said Plaintiff was not a partner, and Plaintiff admitted that, if Smith said Plaintiff would not be a partner, that statement was true. Def. 56.1 ¶¶ 46–47.

That is not fraud. Plaintiff was never a partner or shareholder of Messner Reeves. Def. 56.1 ¶ 5. Plaintiff's complaint is that Messner Reeves later calculated overhead in a way he believes was inconsistent with his alleged compensation arrangement. Def. 56.1 ¶ 45. That is a contract/payment dispute, not a misrepresentation collateral to a contract. Plaintiff identifies no independent legal duty, no extraneous false statement, and no special damages distinct from the compensation he seeks under his contract theory. *See Bridgestone/Firestone*, 98 F.3d at 20; *Telecom Int'l*, 280 F.3d at 196.

Accordingly, Plaintiff's fraud claim should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendant Messner Reeves LLC respectfully requests that the Court grant its motion for summary judgment and dismiss Plaintiff's Complaint in its entirety, with prejudice, including Plaintiff's claims for breach of contract, breach of contractual promises

of payment, and fraud in the inducement, together with such other and further relief as the Court deems just and proper.

Dated: July 27, 2026
New York, New York

LITTLER MENDELSON, P.C.

By: */s/ Eric A. Savage*

Eric A. Savage
900 Third Avenue
New York, New York 10022.3298
Telephone: 212.583.9600
Facsimile: 212.832.2719
esavage@littler.com

*Attorneys for Defendant*